WERDEGAR, J., Concurring.
The central question in this marital dissolution proceeding is how to characterize four years of service credit in the California Public Employees’ Retirement System (CalPERS) that Timothy P. Green (husband) earned during his premarital military service and elected to purchase with community funds during his marriage to Julie R. Green. The court concludes that, “except for the community’s contribution to the cost of obtaining the credit, the four years of additional credit are the husband’s separate property” because the “husband rendered the military service before the marriage.” (Maj. opn., ante, at pp. 1132-1133.) “What matters in determining whether retirement benefits are community or separate property,” the court holds, “is the person’s marital status when the services on which the benefits are based were rendered.” (Ibid.)
I concur in the court’s judgment and agree with its conclusion in this case, where the employee spouse had the same marital status during the time he performed the work on which his public service credits were based and at the time he began employment with a CalPERS participating agency. In this case, husband was single during the four years he served in the United States Air Force (1982-1986) and when he was hired by a CalPERS participating firefighting agency (1989). Only in 1992, after both these events, did the parties marry. On these facts, the military service credits are aptly characterized as husband’s separate property.
A more difficult question would arise if the parties had married before husband began working as a local firefighter.
Family Code section 760 provides generally that property “acquired by a married person during the marriage while domiciled in this state is community property,” while under Family Code section 770, subdivision (a)(1), “property owned by [a] person before marriage” is that person’s separate property. Time of acquisition is thus the “single concrete fact” most determinative of characterization: “To the extent—and only to the extent—that an employee spouse accrues a right to property during marriage before separation, the property in question is a community asset.” (In re Marriage of Lehman (1998) 18 Cal.4th 169, 183 [74 Cal.Rptr.2d 825, 955 P.2d 451]; see In re Marriage of Bouquet (1976) 16 Cal.3d 583, 591 [128 Cal.Rptr. 427, 546 P.2d 1371] [“The status of property as community or separate is normally determined at the time of its acquisition.”].)
*1144 When did husband acquire a property right in his military service credits? As we explained in In re Marriage of Brown (1976) 15 Cal.3d 838, 845 [126 Cal.Rptr. 633, 544 P.2d 561], for purposes of community property law, and regardless of vesting rules, “an employee acquires a property right to pension benefits when he enters upon the performance of his employment contract.” The court is therefore correct to reject the view of the Court of Appeal below that even after husband started working for a CalPERS participating agency, his right to purchase credits for his military service was a mere expectancy, becoming a divisible property right only when the credits were actually purchased. (Maj. opn., ante, at pp. 1139-1141.) But until husband started working for a participating employer, his prior military service entitled him to no CalPERS benefits. Before CalPERS employment, husband’s interest in purchasing CalPERS service credits for his four years of military service could hardly be described as an expectancy, much less a contractual or property right. It appears, therefore, that husband’s property interest in those service credits was acquired when he began work as a firefighter for a participating agency.
Had the parties married between 1986 and 1989, after husband’s military service and before he was hired by a CalPERS participating agency, we would be faced with a hard question: should the credits’ characterization be governed by the employee’s marital status when he earned them through his military service, or by his marital status when he acquired a property right to obtain them by virtue of employment with a participating employer? The fundamental rule of Family Code sections 760 and 770—that a property’s character is governed by marital status at the time the property is acquired— weighs heavily on the side of the latter answer.
Arguments for the former position can certainly be imagined. One might observe that our decision in In re Marriage of Sonne (2010) 48 Cal.4th 118, 125-126 [105 Cal.Rptr.3d 414, 225 P.3d 546] emphasized that the service credit at issue was attributable to CalPERS service preceding the parties’ marriage—though of course that decision, like In re Marriage of Lehman, supra, 18 Cal.4th 169, involved credits for service with a participating employer. The employee in each of these cases thus acquired a property right to the credits at the same time he earned them by his service, and neither case presented the question posed above: If marital status at the time service credit rights are acquired differs from that at the time of the service itself, which governs? One might also point to Government Code section 21034’s command that public service be credited as current or prior service “as it would be credited if the member had been in state service during his or her public service”—though that provision, by its terms, relates to how public service is credited within the CalPERS system, not to how it is characterized under community property law.
*1145 Further, it might be argued that making marital status at the time of the non-CalPERS public service strictly determinative leads to fairer and less arbitrary divisions of property, since the parties’ interests can be prorated to account for any period of marriage during the service, whereas a line drawn at the time CalPERS employment begins will determine the characterization of the entire service credit regardless of how soon before or after the commencement of CalPERS employment the parties married. However, such a result may be less arbitrary than it initially appears because employment decisions made during marriage are often joint decisions. If one spouse helps the other secure CalPERS employment or encourages him or her to accept CalPERS employment when offered, it hardly seems arbitrary to characterize retirement benefits derived from the resulting CalPERS employment as community property. Moreover, any potential arbitrariness might be alleviated through an equitable apportionment of the credits whatever their characterization (see, e.g., In re Marriage of Sonne, supra, 48 Cal.4th at pp. 127-129 [although right to repurchase service credit was husband’s separate property, use of community funds for the repurchase entitled community to a share of the retirement benefit’s annuity portion]), and in any event whether such policy considerations permit us to set aside the principle of Family Code section 760 is doubtful at best.
The present case does not call on us to consider these arguments and counterarguments. The court is not faced here with the problem of conflicting rules looking, on the one hand, to marital status at the time the employee performed the public service and, on the other, to marital status at the time he or she acquired a property right to obtain credits for that service. This is an easier case, as here the parties’ marriage followed both these potentially critical events.
Cantil-Sakauye, C. 1, and Liu, 1, concurred.